IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

UNITED STATES SURETY
COMPANY,

    Plaintiff,

v.                                         CASE NO. 1:19-cv-116-AW-GRJ

TUMBLESON WHITE CONSTR.,
INC., et al.,

    Defendants.

_____/

## **REPORT AND RECOMMENDATION**

Pending before the Court is Plaintiff's Motion for Default Judgment against Defendants Tumbleson White Construction, Inc., J2MW Group, LLC, Joseph M. White, and Sonya H. White. ECF No. 19. Notwithstanding proper service of Plaintiff's Complaint and notice of subsequent proceedings, ECF Nos. 9, 10, 11, 12, 15-1, 17-1, Defendants have elected not to participate in this case. On July 23, 2020, the undersigned conducted a remote evidentiary hearing on Plaintiff's motion, namely to determine an appropriate award of damages. ECF No. 27. The instant motion is, therefore, ripe for consideration. For the reasons explained below, it is respectfully **RECOMMENDED** that Plaintiff's motion should be **GRANTED**.

## I. BACKGROUND

This is a breach of contract case. Plaintiff United States Surety Company ("USSC") is a construction surety company that issues payment and performance bonds for contractors. ECF No. 1 at 3. Defendant Tumbleson was a construction manager that needed payment and performance bonds. *Id.* On May 6, 2014, Defendants each executed a General Indemnity Agreement in favor of USSC, its affiliates, and its agents, as a prerequisite to obtain the payment and performance bonds. *Id.*; *see also* ECF No. 1-1. Defendants agreed as indemnitors to

> jointly and severally exonerate, indemnify, keep indemnified, reimburse and save and hold [USSC] harmless from and against any and all demands, liabilities, losses, costs, damages, attorneys' fees and expenses, investigative fees and expenses, accountants' fees and expenses, engineering and other professional or consultants' fees and expenses of any kind, in-house attorneys' fees and expenses, interest, court costs and any and all other types of losses, costs or expenses of whatsoever kind or nature, and from and against all such losses, costs or expenses which [USSC] may sustain or incur or which arise by reason of or in any manner in consequence of, no matter how remotely, any one or more of the following: the execution or procurement by [USSC] of any Bond; the failure of any Principal or Indemnitor to perform or comply with any and all of the terms, covenants and conditions of this Agreement; the enforcement of any of the terms, covenants and conditions of this Agreement; the conduct of any investigation regarding [USSC's] alleged obligations or liabilities under any Bond or in connection with any Contract; any attempt by or on behalf of [USSC] to obtain a release or reduction of [USSC's] liability or alleged liability under any Bond or Contract; any attempt by or on behalf of [USSC] to recover any unpaid premium in connection with any Bond; the

> prosecution or defense of any action or claim of whatsoever kind or nature in connection with any Bond or Contract whether [USSC], in its sole and absolute discretion, elects to employ its own counsel or, in lieu thereof or in addition thereto, permits or requires any Principal and/or Indemnitor to make arrangements for or assist in [USSC's] legal representation and protection; the loan or advance of any monies to any Principal or Indemnitor; [USSC's] attempt to determine, discharge or mitigate its loss or exposure to loss in connection with any Bond or Contract, or to enforce any of its rights pursuant to this Agreement, by suit or otherwise.

ECF No. 1-1 at 6. USSC maintained "the right, in its sole and absolute discretion, to adjust, settle, prosecute, defend, compromise, litigate, protest, or appeal any claim, demand, suit, award, assessment or judgment on or in connection with any Bond, Bonded Contract, or Contract." *Id.* at 7. Lastly, USSC and Defendants agreed to the following terms of reimbursement:

> In the event of any payment of any kind by [USSC], the Principal and Indemnitor further agree that the liability of the Principal and the Indemnitor shall extend to and include, and [USSC] shall be entitled to charge and recover for, any and all disbursements made by it in Good Faith under the belief that: (1) any Principal or Indemnitor is or has been in default under or pursuant to this Agreement; or (2) [USSC] was or might be liable to pay the claims asserted or the sums paid, whether or not such liability actually existed; or (3) such payments were or are necessary or expedient, in [USSC's] sole and absolute discretion, to protect any of [USSC's] rights or interests or to avoid or lessen [USSC's] liability or alleged liability, whether or not such liability, necessity or expediency actually existed; and the Principal and Indemnitor further agree, acknowledge and stipulate that, notwithstanding the foregoing or any other provision of this Agreement or any other agreement relating to this Agreement, [USSC] shall be

3

> entitled to the rights and remedies set forth in this Section III, and to all of the benefits of this Agreement, with respect to any liability, payment, loss or cost that is incurred or made by [USSC] in Good Faith.

*Id.* at 6.

Tumbleson then entered into two contracts for construction projects requiring payment and performance bonds. The first contract was with the Sumter County Board of County Commissioners for East Bushnell First Station #11. ECF No. 1 at 5–6. Pursuant to the indemnity agreement, USSC issued payment and performance bonds, Bond No. 1001039412, for the Fire Station project that named Tumbleson as the principal and the Sumter BOCC as obligee. *Id.* at 6. The second contract was with the State of Florida Department of Military Affairs to renovate the Crystal River National Guard Armory. *Id.* USSC issued payment and performance bonds, Bond No. 1000998417, for the Armory Renovation project that named Tumbleson as the principal and the Department of Military Affairs as obligee. *Id.*

USSC received several claims against the bonds for the Fire Station and Armory Renovation projects. Sumter BOCC and the Department of Military Affairs made performance bond claims for Tumbleson's allegedly defective or incomplete work. *Id.* at 7. Moreover, "numerous subcontractors, material suppliers, [and] vendors" made payment bond

4

claims for unpaid "labor, services, materials, or equipment they claim to have performed on the [p]rojects at Tumbleson's request[.]" *Id.* Subcontractors Great Lakes Carpet and Tile and Davis-Ulmer Sprinkler Company sued USSC for claims on the payment bond for the Armory Renovation project, and subcontractor Mason Dixon Contracting, LLC, sued USSC for a claim on the payment bond for the Fire Station project. *Id.*

USSC says they were forced to hire consultants and attorneys to "respond to, investigate, defend against, and sometimes resolve" various claims, and, in doing so, USSC has incurred significant losses. *Id.* at 7–8. Before filing the instant action, USSC demanded Defendants indemnify for all amounts and losses it incurred as a result of issuing the bonds on the Armory Renovation and Fire Station projects and post collateral security. *Id.* at 8. Defendants failed to respond or refused, and USSC has since incurred attorney's fees, costs, and other expenses (including in this case). *Id.* at 9–10.

USSC filed its Complaint on June 26, 2019. ECF No. 1. Defendants were served with the Complaint, ECF Nos. 9, 10, 11, 12, but did not enter an appearance or otherwise respond. The Clerk, consequently, entered defaults against Defendants. ECF No. 16 (Clerk's Default against

Tumbleson, J2MW Group, and Joseph M. White); ECF No. 18 (Clerk's Default against Sonya H. White).

USSC moves now for default judgment. ECF No. 19. Plaintiff requests the Court enter judgment finding Defendants jointly and severally liable to USSC under the terms of the indemnity agreement and awarding judgment in the principal amount of its losses plus attorney's fees incurred by USSC in this action. *Id.* at 9. In support thereof, USSC filed an affidavit executed by Sirarpi Arpi Mnatsakanyan, a Senior Bond Claims Attorney for USSC. ECF No. 19-1. The affidavit includes as exhibits: (1) the indemnity agreement; (2) the payment and performance bonds for the Fire Station and Armory Renovation projects; (3) letters and emails from the Sumter BOCC and the Department of Military Affairs stating Tumbleson's performance defaults and demanding remedies from USSC; and (4) accountings of the losses USSC incurred, including proof of payment, for which they have sought indemnification from Defendants.

Upon consideration, the district court determined that USSC stated a claim for breach of contract against Defendants and referred this matter to the undersigned for an evidentiary hearing to assess the request for damages. ECF No. 24. Specifically, the district court recognized USSC's burden to prove that: (1) it settled the claims for the Fire Station and

Armory Renovation projects "in good faith and under the belief that Defendants defaulted under the [indemnity] agreement, that USSC might be liable to pay the claims asserted, or that such payments were necessary or expedient in USSC's discretion to protect its rights, as required under the contract"; and (2) "the fees and expenses it incurred while settling the claims were reasonable." *Id.* at 8.

The undersigned held a remote evidentiary hearing on July 23, 2020, using videoconferencing technology.  ECF No. 27.  Plaintiff's counsel appeared and presented the testimony of John Yi, USSC's in-house counsel.  Defendants did not appear, nor did they notify the Court of an intent to participate.

## II. LEGAL STANDARD FOR DEFAULT JUDGMENT

Federal Rule of Civil Procedure 55 authorizes the Court to enter a default judgment against a party who has failed to plead in response to a complaint.  Fed. R. Civ. P. 55(b).  "Entry of default judgment is only warranted when there 'is a sufficient basis in the pleadings for the judgment entered.'"  *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1245 (11th

Cir. 2015) (quoting *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)[1]).

Although a defaulted defendant is deemed to have admitted well-pleaded allegations of fact as to liability, the Court must determine the "amount and character of damages to be awarded." *Miller v. Paradise of Port Richey, Inc.*, 75 F. Supp. 2d 1342, 1346 (M.D. Fla. 1999); *see also Ensley v. Gene's Wrecker Service, Inc.*, No. 3:16-cv-713-MCR-CJK, 2019 WL 339630, at *1 (N.D. Fla. Jan. 27, 2019) ("[E]ven in the context of a default judgment, a court has an obligation to assure that there is a legitimate basis for any damage award it enters."). The plaintiff has the burden of proving entitlement to and the amount of damages. *Wallace v. The Kiwi Grp., Inc.*, 247 F.R.D. 679, 681 (M.D. Fla. 2008).

The Court may take into account affidavits and such other evidence as it deems necessary. Fed R. Civ. P. 55(a). Further, "The [C]ourt may conduct hearings or make referrals … when to enter or effectuate judgment, it needs to: (A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter." Fed. R. Civ. P. 55(b)(2).

---

[1] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as precedent the decisions of the former Fifth Circuit decided prior to October 1, 1981.

## III.  DISCUSSION

### A.  Suretyship and Indemnity Damages

The Florida Supreme Court has described a suretyship, such as the one here, as

> a contractual tripartite relationship in which one party (the surety) guarantees to another party (the obligee) that a third party (the principal) will perform a contract in accordance with its terms and conditions.  The surety promises the obligee to answer the debt, default, or miscarriage of the principal.  Suretyship is a form of guaranty.  In exchange for a premium, the surety lends its financial strength and credit to the principal on the condition that, if the surety has to satisfy the principal's debt or default, the principal will indemnify the surety for its losses and expenses.  In essence, the surety becomes the guarantor of the principal's ability to perform its obligations to the obligee.  Given this description, it is reasonable to conclude that an owner/obligee, by requiring that a bond be obtained by the principal, is essentially insuring itself from potential losses that would result in the event the principal defaults on its obligations required by the underlying construction contract.

*Dadeland Depot, Inc. v. St. Paul Fire and Marine Ins. Co.*, 945 So. 2d 1216, 1226 (Fla. 2006).  Sureties hold a "vital role … in the construction industry." *Liberty Mut. Ins. Co. v. Aventura Eng'g & Constr. Corp.*, 534 F. Supp. 2d 1290, 1303 (S.D. Fla. 2008).  Accordingly, a surety enjoys "broad discretion to settle a claim[,] and the only defense to indemnity for the settlement is bad faith on the part of the surety."  *Travelers Cas. and Sur. Co. of Am. v. Grace & Naeem Uddin, Inc.*, No. 08-61868-CIV, 2009 WL 4110110, at *2 (S.D. Fla. Nov. 24, 2009).

9

Florida law provides that "[a] surety is entitled to reimbursement pursuant to an indemnity contract for any payments made by it in a good faith belief that it was required to pay, regardless of whether any liability actually existed." *Thurston v. Int'l Fidelity Ins. Co.*, 528 So. 2d 128, 129 (Fla. 3d DCA 1988) (citing *Waterhouse v. McDevitt Street Co.*, 387 So. 2d 470 (Fla. 5th DCA 1980)); *see also Liberty Mut. Ins. Co.*, 534 F. Supp. 2d at 1303–04 ("Sureties draft their indemnity agreements broadly, and with extensive protections, and the courts, understanding the importance of the indemnity agreement, consistently enforce the agreements and the remedies granted to the sureties."). Additionally, the indemnification of attorney's fees—incurred in defending claims on the bonds or in litigation of the indemnity agreement—is subject only to a reasonableness requirement. *See Travelers Cas. and Sur. Co. of Am.*, 2009 WL 4110110, at *2 ("[C]ourts have found that, even where it is not expressly stated, the concept of 'reasonableness' must be applied to any claim for indemnification of attorney fees."); *Sork v. United Benefit Fire. Ins. Co.*, 161 So. 2d 54, 56 (Fla. 3d DCA 1964) (remanding case to the trial court for "a jury to resolve what constitutes a reasonable attorney's fee both in defense of the original action on the performance bond and for prosecuting the instant action on the indemnity agreement").

## B.   Evidence in Support of Damages

Mr. Yi was involved in the origination of Defendants' indemnity agreement in a supervisory role and became directly involved in this litigation in place of Ms. Mnatsakanyan.  As explained above, the indemnity agreement provides for the joint and several liability of Defendants on all losses incurred by USSC that "arise by reason of or in any manner in consequence of, no matter how remotely," the payment and performance bonds.  Mr. Yi testified regarding three categories of losses under the indemnity agreement relevant to this case: (1) direct losses for claims under the payment and performance bonds; (2) loss adjustment expenses, which are fees and costs for attorneys, constructions consultants, and investigations to handle claims against the bonds; and (3) subrogation expenses, which are fees and costs incurred to pursue and recover losses under the indemnity agreement.

USSC offered, and Mr. Yi discussed, three exhibits at the evidentiary hearing.  Exhibit A was USSC's indemnity agreement with Defendants.  Exhibits B and C were, respectively, USSC's loss and recovery transaction reports for Bond No. 1001039412 (the Fire Station project) and Bond No. 1000998417 (the Armory Renovation project).  The loss and recovery transaction reports itemize the losses incurred under both the payment and

performance bonds, fees and costs incurred through outside vendors (attorneys and consultants), any recoveries to reimburse losses, and subrogation expenses.

Mr. Yi testified that when a subcontractor or supplier submits to USSC a payment bond claim, USSC opens an investigation of the claim, sends the claimant a questionnaire, and requests supporting documentation.  USSC reviews this information upon receipt, forwards it to the indemnitors, and invites their response, dispute, or defenses.  If there is a response, USSC will review it and open a dialogue with the claimant to narrow any disputes.  Ultimately, USSC issues a determination letter to the claimant, bond principal, and indemnitors accepting the claim in whole or in part or denying the claim.  Mr. Yi testified this process was followed for each payment bond claim in this case.

Mr. Yi explained that USSC handles performance bond claims on a case-by-case basis.  USSC uses outside counsel and a construction consultant to assess the scope of the work undertaken by the indemnitors on a project and what must be completed.  USSC attempts to ensure that any remaining work is "apples to apples" with the work completed thus far and that the scope of the work is not enhanced or enlarged unreasonably.  This often means that USSC will continue to engage existing contractors or

subcontractors that may complete the work as quickly as possible.  Mr. Yi testified that process was also filed on the performance bond claims against Defendants.

USSC also incurred loss adjustment and subrogation expenses between November 30, 2016, and June 30, 2020, mostly attorney's fees when they hired counsel (Mills Paskert Divers) to defend three lawsuits in state court filed by Defendants' subcontractors and prosecute this breach of contract case.  Prior to the evidentiary hearing, USSC filed with the Court an "Affidavit of Reasonable Attorney's Fees" by Luis-Martinez-Monfort from the law firm of Gardner Brewer Martinez-Monfot, P.A., in Tampa, Fla.  ECF No. 26.  Mr. Martinez-Monfort swears he has knowledge and experience in indemnity matters such as this and to have examined the work files and time records maintained by USSC's outside counsel in connection with this action and the three lawsuits arising from the payment bond claims.  *Id.* at 2.  In the three lawsuits involving payment bond claims, attorneys E.A. Mills and Jordan Miller billed USSC at hourly rates of $295.00 and $230.00, respectively, for a total of $129,416.00.  *Id.* at 4.  In this action, Mr. Mills and Mr. Miller billed USSC at a "blended" hourly rate of $252.79 for a total of $11,830.50.  *Id.*  In sum, USSC expended $141,246.50 in attorney's fees as Defendants' surety.  *Id.*  Mr. Martinez-Monfort opined the hourly rates

13

and total fees charged by Mills Paskert Divers were reasonable and less than the prevailing market value for their services.  *Id.* at 5.

### C. Calculation of Damages

Keeping the above-mentioned legal principles and evidence in view, the Court turns to the matter at hand—determining USSC's damages under the indemnity agreement.  The Court concludes first that USSC is entitled to an award of the $108,944.64 for net losses from the claims paid under the payment and performance bonds.  Mr. Yi testified that USSC paid these claims in good faith following a reasonable investigation, and USSC believed that it was liable to pay the claims asserted and that such payments were necessary to protect its rights under the indemnity agreement.  ECF No. 1-1 at 6.  Neither Florida law nor the indemnity agreement require USSC to prove any actual liability to the claimants existed.  The total amount of $108,944.64 is the difference between the claims paid by USSC for the Fire Station and Armory Renovation projects and the amounts recovered from completion of these projects, as reflected in Exhibits B and C.

Next, USSC incurred alleged loss adjustment and subrogation expenses.  Exhibit C shows that USSC paid $1,122.00 to a construction consultant, Forcon International, in 2016.  Defendants agreed to indemnify

USSC for professional consultant fees, ECF No. 1-1 at 6, and Mr. Yi testified that USSC retains construction consultants as part of its investigation of performance bond claims (typically with the goal of completing the project reasonably and expeditiously).  The Court, therefore, concludes this $1,122.00 loss should be included with a damages award.

USSC also incurred $129,416.00 in attorney's fees for defending three lawsuits by subcontractors under the payment bonds and $11,830.50 in attorney's fees for prosecuting the instant action, all of which was paid to the law firm of Mills Paskert Divers.  ECF No. 19-1 at 8; ECF No. 26.[2] Defendants agreed to indemnify USSC for attorney's fees, ECF No. 1-1 at 6, so the only remaining question is whether the fees were reasonably incurred.  The Court concludes they were.

The Court "is itself an expert on the question [of determining attorney's fees] and may consider its own knowledge and experience concerning reasonable and proper fees." *Norman v. Hous. Auth. of Montgomery*, 826 F.2d 1292, 1303 (11th Cir. 1988).  The proposed hourly rates and total hours of work performed by USSC's counsel are reasonable.  Indeed, it is significant that USSC has already paid its counsel

---

[2] For the purpose of awarding total fees for the preceding, payment bond litigation, the Court uses the amounts reflected in Mr. Martinez-Monfort's affidavit because it is the most recent evidence.  ECF No. 26.

15

for this amount of work at the requested rates. ECF No. 19-1 at 8, 49–107; *see also Martinez v. Hernando Cty. Sheriff's Office*, 579 F. App'x 710, 713–14 (11th Cir. 2014) ("What an attorney charges his clients is 'powerful, and perhaps the best, evidence of his market rate.'" (quoting *Dillard v. City of Greensboro*, 213 F.3d 1347, 1355 (11th Cir. 2000))). What's more, the Court is not alone in this assessment. Mr. Martinez-Monfort's affidavit is valuable evidence of reasonableness, particularly because it is uncontradicted by the record. *See Tiara Condo. Ass'n, Inc. v. Marsh USA, Inc.*, 697 F. Supp. 2d 1349, 1363 (S.D. Fla. 2010) ("Typically, a fee applicant provides an expert affidavit to support the reasonableness of the hourly rates sought."). USSC, therefore, is entitled to an award of damages in the amount of $141,246.50.

In sum, USSC is due to be awarded $251,313.15 in damages. This amount includes; (1) $108,944.65 for net losses from the claims paid under the payment and performance bonds; (2) $1,122.00 in construction consultant fees; and (3) $141,246.50 in attorney's fees incurred in defending lawsuits on claims under the payment bonds and in this instant action. As discussed at the evidentiary hearing, USSC is also entitled to recover the costs of this action under Federal Rule of Civil Procedure 54(d)

in the amount of $956.80, which include USSC's filing fee ($400.00) and expenses for service of process ($556.80).  28 U.S.C. § 1920.

## IV.  CONCLUSION

Accordingly, it is respectfully **RECOMMENDED** that Plaintiff's Motion for Default Judgment against Defendants Tumbleson White Construction, Inc., J2MW Group, LLC, Joseph M. White, and Sonya H. White, ECF No. 19, should be **GRANTED**.  The Court should **DIRECT** the Clerk to enter a final default judgment against Defendants finding them jointly and severally liable to Plaintiff for $251,313.15 in damages and $956.80 in costs, plus post-judgment interest to accrue at the applicable federal rate.

**IN CHAMBERS** this 25th day of August 2020.

*s/Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636**.